**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

LOCAL 288 INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS,

        Plaintiff,

vs.

CCT CORPORATION d/b/a BLACK
HAWK ELECTRIC COMPANY and
ALL COUNTY ELECTRIC
COMPANY,

        Defendants.

No. C97-2036-LRR

**OPINION AND ORDER**

_____

ALL COUNTY ELECTRIC
COMPANY,

        Plaintiff,

vs.

LOCAL 288 INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS,

        Defendant.

No. C03-2052-LRR

_____

**TABLE OF CONTENTS**

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      A.  ACEC v. IBEW (C03-2052-LRR) . . . . . . . . . . . . . . . . . . . . . . 3
      B.  IBEW v. CCT and ACEC (C97-2036-LRR) . . . . . . . . . . . . . . . . . . . . . 4

III. AGREEMENTS GOVERNING THE PARTIES' RELATIONSHIP  . . . . . . . .  6

IV. FINDINGS OF FACT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
    A.  The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
    B.  Alter Ego Status  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
    C.  ACEC's Unsuccessful Attempt to Decertify . . . . . . . . . . . . . . . . . .  12
    D.  The Audit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13
    E.  Correspondence Regarding the Collective Bargaining Agreements  . . . .  14
    F.  Arbitration Before the CIR . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
    G.  Arbitration Before the Labor/Management Committee . . . . . . . . . . .  23

V. CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25
    A.  Did ACEC's Alter Ego Status End When CCT Dissolved?  . . . . . . . . .  26
    B.  Was ACEC Bound by the Provisions of Any of the Collective Bargaining
        Agreements at Issue?  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27
        1.  The 1997-1999 and 1998-2000 Collective Bargaining Agreements
          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29
        2.  The 2000-2003 Collective Bargaining Agreement  . . . . . . . . . . .  30
    C.  Is Enforcement of the Arbitration Awards Appropriate? . . . . . . . . . . .  32
        1.  Enforcement of the Arbitration Award of the CIR . . . . . . . . . . .  34
        2.  Enforcement Of the Arbitration Award of the Labor/Management
          Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  38

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  45

## I. INTRODUCTION

The cases before the court arise under Section 301 of the Labor Management Relations Act of 1947 (the "Act"), as amended, 29 U.S.C. §§ 185 *et seq.* The cases proceeded to a trial to the court on February 24, 2005. At the close of the evidence, the court reserved ruling and allowed the parties to submit written closing arguments. On March 14, 2005, All County Electric Company ("ACEC") filed its written argument. On March 15, 2005, Local 288 International Brotherhood of Electrical Workers (the "IBEW")

filed its written argument. The cases therefore are fully submitted and ready for decision.

## II. PROCEDURAL BACKGROUND

### A. ACEC v. IBEW (C03-2052-LRR)

On October 3, 2003, ACEC filed its Complaint in case number C03-2052-LRR seeking to vacate the May 13, 2003 decision by the Council on Industrial Relations for the Electrical Contracting Industry (the "CIR") that ACEC and the IBEW were "directed to sign and implement immediately the Inside Agreement" that was to be in effect between ACEC and the IBEW for the period beginning on June 1, 2003 and ending on May 31, 2006 (the "2003-2006 collective bargaining agreement"). ACEC alleges in its Complaint ACEC was not an alter ego of Black Hawk Electric Company during the period from June 1, 2000 to May 31, 2003, and thus, ACEC was not bound by the collective bargaining agreement in effect between the IBEW and the Cedar Falls/Waterloo Division of the Iowa Chapter of National Electrical Contractors Association ("NECA") between those dates (the "2000-2003 collective bargaining agreement"). ACEC also alleges that, because ACEC was not bound by the 2000-2003 collective bargaining agreement, the CIR did not have jurisdiction to hear any purported disputes between ACEC and the IBEW. ACEC further alleges, even if it was bound by the 2000-2003 collective bargaining agreement, the doctrine of federal labor law established in *International Association of Bridge, Structural & Ornamental Iron Workers, Local 3 v. National Labor Relations Board*, 843 F.2d 770 (3d Cir. 1988) (commonly referred to as "*Deklewa*"), and 29 U.S.C. § 158(f) permitted ACEC to unilaterally terminate the agreement.

On October 14, 2003, the IBEW filed an Answer to ACEC's Complaint. In addition, the IBEW filed a Counterclaim against ACEC in which the IBEW alleges ACEC's failure and refusal to comply with the CIR's award constitutes a breach of the 2000-2003 collective bargaining agreement.

On October 22, 2004, ACEC filed a motion for summary judgment (docket no. 19). The IBEW also filed a motion for summary judgment on October 22, 2004 (docket no. 20). On November 15, 2004, the IBEW resisted ACEC's motion for summary judgment. Also on November 15, 2004, ACEC resisted the IBEW's motion for summary judgment. On November 23, ACEC replied to the IBEW's resistance. On November 26, 2004, the IBEW replied to ACEC's resistance. The court reserved ruling on the motions for summary judgment and allowed the case to proceed to trial on the merits.

### B. IBEW v. CCT and ACEC (C97-2036-LRR)[1]

On October 7, 2003, ACEC filed its Complaint, seeking to vacate or, alternatively, to modify the July 11, 2003 arbitration award issued by the Labor/Management Committee of the IBEW and NECA (the "Labor/Management Committee") ordering ACEC to pay the IBEW $1,725,048.48 in back pay damages for the period between January 1, 1997, and December 31, 2000. The IBEW filed its Answer and Counterclaim on November 10, 2003. The IBEW's Counterclaim asked the court to enforce the July 11, 2003 arbitration award and to order ACEC to comply immediately with the arbitration award. On November 28, 2003, ACEC filed its Answer to the IBEW's Counterclaim. On May 17, 2004, ACEC filed its First Amended Complaint.[2] On October 1, 2004, ACEC filed its

---

[1] The court herein sets forth the procedural background of case C03-2063-LRR, which is entitled, "All County Electrical Co., Plaintiff, vs. International Brotherhood of Electrical Workers, Local Union 288, Defendant." Case C03-2063-LRR has been consolidated into case C97-2036-LRR, so the result is ACEC filed a Complaint in a case in which it appears (by the current case number) to be a defendant.

[2] The only difference between the Complaint and the First Amended Complaint is in paragraph 32. Paragraph 32 of the Complaint states, "There in fact does not exist and never did exist a majority of support of Union by All County's employees." Paragraph 32 of the First Amended Complaint reads, "All County has reasonable, good faith grounds
(continued...)

motion for summary judgment (docket no. 28), contending it is entitled to judgment as a matter of law that the July 11, 2003 arbitration award must be vacated. Also on October 1, 2004, the IBEW filed its motion for summary judgment (docket no. 30). On October 25, 2004, ACEC resisted the IBEW's motion for summary judgment and the IBEW resisted ACEC's motion for summary judgment. On November 1, 2004, ACEC filed a reply to the IBEW's resistance. On November 4, 2004, the IBEW filed a reply to ACEC's resistance.

In the original case, C97-2036-LRR, ACEC filed a motion for summary judgment (docket no. 98), on October 12, 2004, identical to the motion for summary judgment filed in case C03-2063-LRR. On November 5, 2004, the IBEW resisted ACEC's motion for summary judgment. On November 15, 2004, ACEC filed a reply to the IBEW's resistance.

On February 16, 2005, the court held a status hearing at which the parties agreed it was appropriate to consolidate cases C97-2036-LRR and C03-2063-LRR into case C97-2036-LRR.[3] The parties also agreed to simultaneously try cases C97-2036-LRR and C03-2052-LRR to the court. The cases proceeded to trial on February 24, 2005. At the close of the evidence, the court reserved ruling and allowed the parties to submit written closing arguments. On March 14, 2005, ACEC filed its written argument. On March 15, 2005, the IBEW filed its written argument. The cases therefore are fully submitted and ready

---

[2](...continued)
for believing that Union has no majority status among its employees."

[3] At the hearing, ACEC and the IBEW appeared through counsel. The court invited attorney James Swanger, who previously had appeared in this matter as counsel for C.C.T. Corporation d/b/a Black Hawk Electrical Company ("CCT"), to participate in the hearing. Mr. Swanger declined to do so because he said CCT has not been involved in this matter for more than 2 years.

for decision.

### III. *AGREEMENTS GOVERNING THE PARTIES' RELATIONSHIP*

The IBEW and NECA enter annual or multi-annual collective bargaining agreements to which assenting employers are bound. The IBEW and NECA had collective bargaining agreements between them for the following relevant periods: (1) June 1, 1996, to May 31, 1997 (the "1996-1997 collective bargaining agreement"); (2) June 1, 1997, to May 31, 1999 (the "1997-1999 collective bargaining agreement");[4] (3) June 1, 1998, to May 31, 2000 (the "1998-2000 collective bargaining agreement"); and (4) the 2000-2003 collective bargaining agreement. Page 2 of each collective bargaining agreement between the IBEW and NECA reads:

> Agreement by and between the Waterloo/Cedar Division, Iowa Chapter, National Electrical Contractors Association and Local Union #288, International Brotherhood of Electrical Workers. It shall apply to all firms who sign a Letter of Assent to be bound by the terms of this Agreement. As used hereinafter in this Agreement the term "Chapter" shall mean the Waterloo/Cedar Falls Division, Iowa Chapter, National Electrical Contractors Association, and the term "Union" shall mean Local Union #288, International Brotherhood of Electrical Workers. The term "Employer" shall mean an individual firm who has been recognized by an assent to this Agreement.

CCT's president, Harold Chapman, signed a Letter of Assent-B on May 5, 1993, which set forth an agreement between CCT and the IBEW that CCT would be bound by the terms of the collective bargaining agreement between the IBEW and NECA then in

---

[4] A subsequent collective bargaining agreement went into effect June 1, 1998; thus, the 1997-1999 collective bargaining agreement terminated on that date by its own terms.

effect.[5]  The Letter of Assent states, in pertinent part, the following:

> If the undersigned employer does NOT intend to comply with and be bound by all of the terms and conditions in any subsequently negotiated agreements between the above-mentioned parties, he shall so notify the Local Union in writing at least sixty (60) days prior to the termination date of the then current agreement.

Joint Exhibit ("Jt. Ex.") Y.  The parties agree CCT was bound to comply with the terms of each collective bargaining agreement into which the IBEW and NECA entered after CCT executed the Letter of Assent.  CCT could not terminate any collective bargaining agreement until it notified the IBEW of its intent to terminate the agreement in compliance with the Letter of Assent.

Several sections of the collective bargaining agreements are relevant to the cases presently before the court.  Section 1.01(a) of the 1996-1997 collective bargaining agreement provides:

> This Agreement shall take effect June 1, 1996, and shall remain in effect through May 31, 1997, unless otherwise specifically provided for herein.  It shall remain in effect from year to year thereafter, from June 1, through May 31, of each year, unless changed or terminated in the way later provided herein.

---

[5] CCT and ACEC have been found to be alter egos, as explained *infra* at Part IV.B. The court notes, despite the fact CCT has not formally withdrawn from participation in C97-2036-LRR, CCT apparently sold the Waterloo division of Black Hawk Electrical Co. in the spring of 1997 and dissolved in the spring of 1998 and has not been involved in the case for several years.  CCT last appeared in this case on January 28, 2000, when CCT and ACEC filed their Second Status Report.  The court assumes CCT no longer is a party to this case.

Jt. Ex. L at 2.[6]  Section 1.02(a) of the 1996-1997 collective bargaining agreement provides:  "Either party desiring to change or terminate this Agreement must notify the other in writing at least 90 days prior to the anniversary date."  Jt. Ex. L at 2.[7]  Section 1.04(a) of the 1996-1997 collective bargaining agreement states,

> There shall be a Labor/Management Committee of three representing the Union, and three representing the Employer. It shall meet regularly at such stated times as it may decide. however, it shall also meet within 48 hours when notice is given by either party.  It shall select its own Chairman and Secretary.

Jt. Ex. L at 4.[8]

Article IV of the 1996-1997 collective bargaining agreement, entitled "Referral Procedure," sets forth the procedure of referral of applicants for employment.  Section 4.01 provides in pertinent part, "The Union shall be the sole and exclusive source of

---

[6] Section 1.01(a) of the 1997-1999, 1998-2000 and 2000-2003 collective bargaining agreements is essentially the same except the effective dates are specific to each collective bargaining agreement.  *See* Jt. Ex. M, N, O.  The court notes Jt. Ex. N is an incomplete copy of the 1998-2000 collective bargaining agreement.  The court assumes the missing portions of the 1998-2000 collective bargaining agreement are identical to the 1996-1997 and 1997-1999 collective bargaining agreements, as the parties do not dispute this, and it is clear the parties intended to offer the 1998-2000 collective bargaining agreement in its entirety but mistakenly included only the odd-numbered pages.

[7] Section 1.02(a) of the 1997-1999 and 1998-2000 collective bargaining agreements is identical to the language in the 1996-1997 collective bargaining agreement.  *See* Jt. Ex. M, N.

[8] Section 1.04(a) of the 1997-1999 and 1998-2000 collective bargaining agreements is identical to the language in the 1996-1997 collective bargaining agreement.  *See* Jt. Ex. M, N.  In the 2000-2003 collective bargaining agreement, this language is found in Section 1.05.  *See* Jt. Ex. O at 3.

referral of all applicants for employment." Jt. Ex. L at 18. Section 4.10 states, "Apprentices shall be hired and transferred in accordance with the apprenticeship provisions of the Agreement between the parties." Jt. Ex. L at 21. Article V of the 1996-1997 collective bargaining agreement, "Apprenticeship and Training," authorizes the use of a Joint Apprenticeship and Training Committee ("JATC"), which must create local standards governing the qualifications, selection, education and training of apprentices and provides that the parties to the collective bargaining agreement will promptly agree upon the local standards. Section 5.07(b) states, "An individual Employer shall employ only apprentices assigned by the Committee. No Employer is guaranteed any specific number of apprentices. The Committee will determine whether or not any individual Employer is entitled to an apprentice as well as the total number of apprentices to be assigned to that Employer." Jt. Ex. L at 24.[9]

Section 1.02(a) of the 2000-2003 collective bargaining agreement reads, "Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter." Jt. Ex. O at 2. Section 1.02(d) of the 2000-2003 collective bargaining agreement[10] provides as follows:

Unresolved issues or disputes arising out of the failure to

---

[9] The language of Sections 4.01, 4.10, and 5.07(b) of the 1997-1999 and 1998-2000, collective bargaining agreements is identical to the above-quoted language. *See* Jt. Ex. M, N. In the 2000-2003 collective bargaining agreement, the quoted language previously contained in Section 4.01 is renumbered Section 4.02 and the language previously designated Section 4.10 is renumbered Section 4.20.

[10] The court refers here to the 2000-2003 collective bargaining agreement because the language of only that collective bargaining agreement is relevant in this case.

> negotiate a renewal or modification of this agreement that
> remain on the 20th of the month preceding the next regular
> meeting of the Council on Industrial Relations, may be
> submitted jointly or unilaterally. . . . The Council's decisions
> shall be final and binding.

Jt. Ex. O at 3. The CIR is a private arbiter of disputes arising between IBEW local unions and signatory employers. The CIR meets in Washington, D.C., only at specified times during the year and it hears several cases during each session.

Section 5.07 of the 2000-2003 collective bargaining agreement reads, "All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selection procedures." Jt. Ex. O at 25. Section 5.09 of the 2000-2003 collective bargaining agreement provides in relevant part, "Though the JATC cannot guarantee any number of apprentices[,] if a qualified employer requests an apprentice, the JATC shall make reasonable efforts to honor the request." Jt. Ex. O at 25.

## IV. FINDINGS OF FACT

The court finds the following facts after accepting the stipulations of the parties, the undisputed material facts submitted in connection with the parties' respective motions for summary judgment, and the evidence presented by the parties at trial which the court believed.

### A. The Parties

ACEC, an Iowa corporation with its principal place of business in Waterloo, Iowa, is an electrical contractor. ACEC is an employer in an industry affecting commerce, as defined in Sections 501(1), 501(3) and 502(2) of the Act, and within the meaning of Section 301 of the Act. The IBEW is a local chapter of the International Brotherhood of Electrical Workers which maintains an office in Waterloo, Iowa. The IBEW is a labor organization representing employees in an industry affecting commerce, as defined in

Sections 501(1), 501(3) and 502(5) of the Act. The IBEW, through its authorized officers and agents, is engaged in representing or acting for employee members in, among other locations, Black Hawk County, Iowa.

### B. Alter Ego Status

On January 23, 1997, the Labor/Management Committee issued a written decision in which it ruled ACEC was an alter ego of CCT. The Labor/Management Committee further ruled ACEC was bound by the collective bargaining agreement between the IBEW and NECA from the date of the ruling forward and ACEC was liable to the IBEW for amounts it should have paid under the collective bargaining agreement for the prior thirty days. Trial Ex. D-1. On September 29, 1998, the Honorable Michael J. Melloy, United States District Court Judge for the Northern District of Iowa,[11] directed the Clerk of Court to enter judgment ordering ACEC to comply immediately and fully with the terms and conditions of the January 23, 1997 arbitration award.

On January 27, 1999, the Regional Director of the NLRB issued a Decision and Order finding ACEC's status as an alter ego did not end when CCT dissolved. Specifically, the Regional Director held as follows:

> Petitioner also argues that ACEC cannot be the alter ego of CCT because at all times during the pendency of its petition, CCT was closed and its business had been sold to former rank-and-file employees of CCT. If ACEC was ever an alter ego of CCT, or its predecessor Black Hawk, it became bound to the collective-bargaining relationship at that point. I have found that Black Hawk and ACEC, then CCT and ACEC, were alter egos since 1982. ACEC thus became party to their contracts, and to the Section 9(a) relationship established in 1988. ACEC gets out of those obligations only with a proper

---

[11] Judge Melloy since has been elevated to the United States Court of Appeals for the Eighth Circuit.

> showing of loss of majority support, not by simply closing or
> selling off CCT. The Board has never dismissed an alter ego
> allegation on the grounds that the union half of the double-
> breasted operation was sold or closed by the time of the charge
> or hearing. E.g., Twin Cities Electric, 296 NLRB 1014
> (1989); Haley & Haley, Inc., 289 NLRB 649 (1988).

Jt. Ex. K-49 at 19. On October 25, 2000, a three-member panel of the NLRB denied

ACEC's request for review of the Regional Director's decision because ACEC's request

raised no substantial issues warranting review. On December 4, 2000, after the NLRB's

decision on ACEC's alter ego status became final, the Eighth Circuit Court of Appeals

affirmed Judge Melloy's decision. *Int'l Bhd. of Elec. Workers, Local 288 v. CCT Corp.*

*d/b/a Black Hawk Elec. Co.*, No. 98-3734 (8th Cir. Dec. 4, 2000).

### C. ACEC's Unsuccessful Attempt to Decertify

On February 16, 1999, Jim Campbell, a journeyman electrician with ACEC, called

Ken Greenhurst of the NLRB and asked him what actions ACEC was required to take to

decertify the IBEW as ACEC's bargaining representative. Greenhurst forwarded to

Campbell a decertification form to file. Campbell circulated to the employees of ACEC

a petition which stated: "We the employees of All County Electric Company do not wish

to be affiliated or represented by Local 288. (IBEW)." Campbell filed the NLRB form

502, the decertification form Greenhurst sent to him, on April 15, 1999. On April 16,

1999, Campbell called Greenhurst to confirm the results of ACEC's decertification

application. Campbell was notified on May 19, 1999 that ACEC's petition for

decertification was denied by the NLRB. On July 23, 1999, Campbell received the

following letter from the Regional Director of the NLRB:

> The above captioned case, arising from a petition filed
> pursuant to Section 9(c) of the National Labor Relations Act,
> as amended, has been carefully investigated and considered.

As a result of an administrative investigation, it appears that further proceedings are not warranted at this time. In <u>All County Elec. Co.</u>, 18-RM-1344, et al. (Jan. 27, 1999), I found that the Employer was an alter ego of another employer, CCT Corp. d/b/a Blackhawk Elec. Co., at all material times since 1982, and that the Employer thus became a party to CCT's Section 9(a) relationship and contracts with the Union. CCT designated the National Electrical Contractors Association (NECA) as its agent for collective bargaining, and its last contract before its formal dissolution had a term of June 1, 1997 to May 31, 1999. This petition was filed on April 15, 1999, during the insulated period of the June 1, 1997 to May 31, 1999 contract. In these circumstances, I find that the June 1, 1997 to May 31, 1999 contract acts as a bar to processing the petition. In addition, I find that the Petitioner's telephonic and unsupported expression of interest in filing a decertification petition during the open window period does not substantially satisfy the Board's requirements for a petition, unlike <u>Duke Power Co.</u>, 191 NLRB 308 (1971), in which the petitioner timely filed a written request supported by other employees' signatures, and only the formal petition was late. Accordingly, further proceedings are not warranted at this time, and I am, therefore, dismissing the petition in this matter.

Jt. Ex. P. The Regional Director's letter to Campbell also informed Campbell of ACEC's right to appeal his decision to the NLRB and the proper procedures for doing so. ACEC appealed the Regional Director's decision regarding its decertification efforts to the NLRB and ACEC's appeal was denied.

### D.  The Audit

In case C97-2036-LRR, Judge Melloy decided the IBEW is entitled to an award of back pay for ACEC's violation of the 1996-1997 collective bargaining agreement. In an order dated February 23, 2001, Judge Melloy noted the following:

[the] issues remaining for resolution are the amount of any

> back pay award which may be owed by All County Electric
> Company to the Union and its employees, the effect of the
> supersedeas bond, and the payment of that back pay award.
> The parties have agreed to meet and try to agree upon a neutral
> accounting firm to audit the All County Electric Company's
> books and records, to determine the amount of the back pay
> award.

In accordance with Judge Melloy's February 23, 2001 Order, the parties chose Rodney D. Foster, of RSM McGladrey, Inc., to conduct the audit. The IBEW and ACEC each instructed Foster on its preferred method for conducting the audit. Foster was asked to audit ACEC's records using each method. In a May 3, 2002 letter to the attorneys representing ACEC and the IBEW, Foster set forth his conclusions regarding the amount ACEC owes to the IBEW employing each party's accounting method. On March 10, 2003, the undersigned judge ordered the parties to submit to the Labor/Management Committee the issue of which party's method to use to calculate the amount of the IBEW's back pay award.

### E. Correspondence Regarding the Collective Bargaining Agreements

CCT and ACEC sent several letters to NECA and the IBEW which ACEC contends terminated ACEC's obligations under the collective bargaining agreements. On April 4, 1997, Dennis Baldwin, President of Black Hawk Electrical Company, sent identical letters to Tom Newton, the executive director of NECA, and to Ritchie Kurtenbach, the Business Manager for the IBEW, informing them:

> C.C.T. dba Black Hawk Electrical Company will sell the
> Waterloo division as of April 30, 1997. For information
> concerning the new company, contact Rick Brede. It has been
> a pleasure working with you in the Waterloo area.

Jt. Ex. S, T.

On June 13, 1997, CCT sent its last Trust Fund Payment Statement to NECA and

14

its final National Electrical Benefit Fund statement, in which CCT indicated it was the "Final Report to this Local Union area." On November 6, 1997, CCT sent another letter to NECA which included a copy of its April 4, 1997 letter to NECA. On October 13, 1998, David Trost, President of ACEC, sent to Kurtenbach a letter which stated:

> In regard to your letter of October 9, 1998. I am aware of the information you transmitted to us. We wish to remind you that you were notified in early May of 1997 by C.C.T. Corporation and its officers that their operation ended on 5/31/97 and the corporation dissolved in early 1998 from information provided to us this morning. Any correspondence that you wish to convey to me needs to be conveyed to All County Electric, but should be sent to our counsel, David Tyler. Mr. Tyler can be contacted at the 500 Waterloo Building, at 531 Commercial St., Waterloo, IA 50701. Please forward in the future any correspondence to his office. We have conveyed this information to Mr. Tyler and he will be in touch with you as necessary. If I can be of any further service, please don't hesitate to contact me.

Jt. Ex. V.

In a letter dated March 1, 2001, from Trost to Richard Moon, of NECA, and Kurtenbach, Trost stated:

> Recently, an adverse Ruling was made by the National Labor Relations Board regarding ACEC and its relationship with C.C.T. d/b/a Black Hawk Electrical, as you know, C.C.T. d/b/a Black Hawk Electrical was dissolved back in 1997 and no longer exists.
>
> ACEC, as you also know, has never been a Member of NECA nor a Member of the Area Wide Bargaining Committee, the Labor Management Committee, or in any way participated in negotiations with respect to the Area Labor Agreement. ACEC has never signed any Assenting Employer Agreement whereby its Bargaining Rights were assigned to NECA or anyone else, for that matter.

> Therefore, effective as of this date, ACEC hereby gives Notice
> that it withdraws to itself its Bargaining Rights, if any, with
> respect to the representation granted by the National Labor
> Relations Board of Local 288 of the IBEW, for employees
> involved in the Waterloo operation. Please take note of this
> and govern yourself accordingly.

Jt. Ex. W.

On February 26, 2003, Kenneth Maas, Business Manager/Financial Secretary of the

IBEW, sent to Trost a letter in which Maas informed Trost:

> In accordance with Article 1, Section 1:02(a) & (b), of the
> Waterloo Inside Agreement between IBEW Local Union 288
> and Waterloo Division, Iowa Chapter NECA, please be
> advised that Local Union 288 desires to make the following
> amendments to the Agreement as found on page 2 of this
> notice.
>
> We would like to have our first meeting with All County
> Electric some time in late March if that is mutually agreeable
> to start the negotiations process.
>
> The Local Unions [sic] facilities are available for these
> meetings, if that is agreeable. If you should wish to meet at a
> different location, please let us know where you would like to
> meet. The negotiations committee for Local 288 is ready to
> commence negotiations with All County Electric for a mutually
> beneficial resolve.
>
> Please contact me so that we might schedule a mutually
> agreeable date and time to meet.

Jt. Ex. BB. The letter further informed Trost of the actual changes the IBEW wished to

make to the 2000-2003 collective bargaining agreement to be incorporated into the 2003-

2006 collective bargaining agreement.

On February 28, 2003, Trost sent to Maas a letter in which Trost stated:

In response to your letter of February 20, 2003,[12] this will confirm our previous notices/advisement that All County Electrical Company contends that its alter ego status/relationship with Black Hawk Electric, found to be established as of January 23, 1997, has been subsequently terminated and no longer exists. That issue remains before the Federal District Court and has never been finally resolved.

Pursuant to the De[k]lewa decision, timely notice is all that is necessary to effect a termination of a craft industry collective bargaining relationship. Bargaining, therefore, would appear to be inappropriate at this time.

Please take note and govern yourself accordingly.

Jt. Ex. X.

On April 3, 2003, Maas sent to Trost a letter indicating Maas disagreed with Trost's assertion in his February 28, 2003 letter that no collective bargaining agreement or relationship currently existed between the IBEW and ACEC. Maas also renewed his request for bargaining with ACEC regarding the IBEW's proposed amendments to the 2000-2003 collective bargaining agreement to be included in the 2003-2006 collective bargaining agreement. Jt. Ex. CC.

On April 17, 2003, W. David Tyler, ACEC's attorney, responded to Maas's previous letters and indicated to Maas that Tyler would be representing the ACEC in the resolution of issues between the IBEW and ACEC and that it was ACEC's position there were outstanding issues to be addressed prior to submitting any matter to arbitration. Tyler further inquired as to whether the IBEW was represented by counsel and questioned the rules under which any arbitration between the parties would proceed. Tyler also requested information on the identity of the Chairman of the Arbitration Panel and informed Maas

---

[12] The court assumes Trost referred to Maas's February 26, 2003 letter, as there is no letter from Maas to Trost dated February 20, 2003 in the record.

he was unavailable at the time the hearing before the CIR had been scheduled, which was April 30, 2003. Tyler discussed other issues regarding the mechanics of the scheduled arbitration in his letter and requested that the IBEW contact him to begin to resolve some of the issues raised therein. Jt. Ex. DD.

On April 18, 2003, Maas sent to Trost another letter requesting that ACEC bargain with the IBEW regarding the IBEW's proposed amendments to the 2000-2003 collective bargaining agreement to be put in place in the 2003-2006 collective bargaining agreement. Maas further indicated, because of the time constraints and in compliance with Section 1.02(d) of the 2000-2003 collective bargaining agreement, Maas had, as of the date of his letter, "filed a unilateral request for forms for submission of unresolved issues between the parties, and [he was] submitting [the IBEW's] case to the May 2003 session of the Council on Industrial Relations." Maas included with this letter his request for arbitration to the CIR as notice to ACEC of the IBEW's intent to submit the unresolved issues between the parties to arbitration. In closing, Maas renewed his request that ACEC bargain with the IBEW regarding the terms of the 2003-2006 collective bargaining agreement in an attempt to avoid submitting their dispute to the CIR. Jt. Ex. EE.

On April 21, 2003, Maas sent to Trost a letter again informing Trost that Maas was submitting a unilateral request for forms for submission of unresolved issues between the parties to the CIR. Maas enclosed therewith a copy of the completed request for CIR Submission Forms and agreed to supply to ACEC a copy of the completed forms once Maas received and completed such forms. Jt. Ex. FF.

On April 23, 2003, Tyler sent to Maas another letter indicating Trost had forwarded to Tyler Maas's April 18 and 21 letters and had asked Tyler to respond on behalf of ACEC. Tyler relayed to Maas in his letter the following information regarding ACEC's position on the IBEW's request to arbitrate before the CIR:

First, we acknowledge receipt of your letters dated February 26, April 3, April 18 and April 21, and the demands to Bargain included therein. Further, we note that none of the allegedly related entities have ever conducted an election to determine the appropriate Bargaining Representative. Absent[] an NLRB supervised election, none of the Business Organizations[,] even those which have ceased to exist, fall under Section 9(A) of the National Labor Relations Act, as amended, but rather because of the absence of an Election, fall under Section 8(F) of the National Labor Relations Act, as amended. For this reason they are, therefore, subject to the Rulings of the Court in the Deklewa Decision and timely Notice of the Company's election to terminate the IBEW Representation of its employees was served, earlier this year. Therefore, as of May 31, 2003, the IBEW Representation of the employees of ACEC will terminate.

Jt. Ex. GG. Tyler further informed Maas it was ACEC's position that any bargaining rights and assent granted to NECA to bargain on behalf of CCT, which were held to apply to ACEC as CCT's alter ego, had terminated when CCT ceased to exist. Tyler posited that ACEC's bargaining rights reverted back to ACEC when CCT ceased to exist and, because the IBEW had not approached ACEC to execute a collective bargaining agreement after CCT ceased to exist, there was no collective bargaining agreement in effect between ACEC and the IBEW. Further, Tyler informed Maas that Tyler did not believe the IBEW could submit issues to arbitration before the CIR prior to engaging in some form of bargaining with ACEC. Tyler also stated that, to the best of his knowledge, there had been no meetings between the IBEW and employees of ACEC regarding the bargaining process, and since ACEC was no longer a member or a participant in the industry-wide collective bargaining agreement, the IBEW was bound to negotiate a separate collective bargaining agreement with ACEC. Finally, Tyler reiterated his belief the IBEW's rush to the CIR was premature and inappropriate at this time. Jt. Ex. GG.

On April 28, 2003, Maas sent to Trost a letter in which he advised ACEC of the IBEW's intent to unilaterally submit forms to the May 2003 CIR regarding the IBEW's proposed changes to the 2000-2003 collective bargaining agreement. Jt. Ex. HH.

On April 30, 2003, Tyler sent to Maas a letter in which Tyler indicated ACEC had not received the information previously requested of the IBEW and notified Maas that Tyler was not available for the hearing or presentation before the CIR scheduled for May 12 and 13, 2003. Tyler requested the hearing be rescheduled to accommodate his schedule. Tyler indicated ACEC wanted to be present at the hearing before the CIR to represent ACEC's interests. Jt. Ex. II.

On May 1, 2003, Maas sent to Trost a letter in which Maas referred to his April 28, 2003 letter and stated "I am at this time inquiring as to whether [ACEC] wishes to join in the submission to the CIR. Please respond immediately." Jt. Ex. JJ.

On May 5, 2003, Maas sent to Tyler a letter in which Maas stated:

> In response to your letter of April 30, 2003, I suggest that you contact your client, Mr. Dave Trost, as to what issues have been submitted to CIR.
>
> Mr. Trost was sent notification by certified mail on February 26, 2003 stating the Union's desire to make amendments to the Agreement.
>
> Also, on April 29, I hand delivered and sent by certified mail, a copy of my brief that was submitted to CIR. This brief also states the Union's position on each of the issues submitted to CIR.
>
> On April 28, 2003, Mr. Trost was sent and received on April 29, 2003 a copy of the completed submission forms that was [sic] sent to CIR listing the unresolved issues.
>
> I suggest that you be in touch with Mr. Trost and obtain copies of these documents.

> In addition, I am not aware of any provisions that allow for an attorney to be present and participate in CIR hearings. This is a matter that Mr. Trost would need to address to the CIR.
>
> As far as your request to postpone the CIR hearing date, I have no control over this scheduling and suggest that Mr. Trost should contact the CIR. I have no desire to reschedule the hearing and do not plan on requesting that it be postponed.
>
> I am planning on, and look forward to presenting my case before CIR on the scheduled date. I look forward to seeing Mr. Trost there should he wish to appear.

Jt. Ex. LL.

On May 5, 2003, Tyler sent to Maas a letter stating Tyler had been designated by ACEC to be its "Official Bargaining Representative." Tyler indicated to Maas the IBEW's refusal to "honor the designation of the Official Bargaining Representative" was an unfair labor practice and threatened to file an "Unfair Labor Practice" against Maas and the IBEW if the IBEW did not cease in its refusal to recognize him as the "Official Bargaining Representative." Jt. Ex. NN. Tyler stated the IBEW had not provided to ACEC the information ACEC had requested regarding the contractual agreement the IBEW alleged applied to the employees of ACEC and the IBEW. Tyler further stated ACEC had not received from the IBEW its proposed changes to any collective bargaining agreement that might have existed between the parties. Finally, Tyler stated he believed it was premature for the parties to proceed with arbitration before the CIR when "there had been no presentation of position by the parties, no bargaining with respect to the issues that may keep the parties from final agreement, and no impasse yet reached." Jt. Ex. NN. Tyler then contended the CIR was without jurisdiction over any dispute between the parties at that point in time.

Maas responded to Tyler's letter on May 7, 2003. Maas indicated in his response

the IBEW had not previously been aware of Tyler's status as ACEC's "Official Bargaining Representative," and pledged that the IBEW would send all future correspondence regarding bargaining directly to Tyler. Maas informed Tyler he had sent to Trost information regarding the IBEW's proposed amendments to the collective bargaining agreement between the parties. Maas included a copy of his May 5, 2003 letter to Trost and offered to supply to Tyler any documents the IBEW sent to Trost of which Tyler had not received copies. Jt. Ex. OO.

### F. Arbitration Before the CIR

On May 12 and 13, 2003, the IBEW presented to the CIR the issue of the amendments to the 2000-2003 collective bargaining agreement to be put in effect in the 2003-2006 collective bargaining agreement. Maas appeared on behalf of the IBEW and presented to the CIR a brief and an oral argument. ACEC did not appear at the hearing. The CIR issued a decision on May 13, 2003, in which it unanimously ruled:

> After careful consideration of the evidence submitted, the Council rules as follows:
> 1. The parties are directed to sign and implement immediately the Inside Agreement which is attached hereto and hereby made part of this decision. Sufficient copies of this agreement are to be promptly submitted for approval in accordance with the usual procedure. These copies must contain original signatures but need not include the original agreement.

Ex. B to ACEC's Complaint in C03-2052-LRR.

On June 20, 2003, Maas sent to Tyler a letter to which Maas attached a copy of the CIR's decision and ten copies of the 2003-2006 collective bargaining agreement between the IBEW and ACEC which the CIR directed the parties to execute. Maas asked that ACEC execute the each of the copies of the agreement, keep one copy for ACEC and forward to the IBEW the remaining nine copies by no later than July 1, 2003. ACEC did

not respond to Maas's letter and did not return any of the copies of the agreement.

### G. *Arbitration Before the Labor/Management Committee*

On July 8, 2003, ACEC and the IBEW met before the Labor/Management Committee to address the IBEW's written grievance and to satisfy the court's order that the parties submit to arbitration the method of computing the back pay to be awarded to the IBEW. Maas and Kurtenbach represented the IBEW. Tyler and Trost appeared on behalf of ACEC. The IBEW's grievance alleged ACEC violated the following portions of the collective bargaining agreements: (1) Article III, by failing to pay employees at their contractual rates of pay; (2) Article IV, by failing to hire through the IBEW's hiring hall; (3) Article V, by failing to hire apprentices through the JATC; and (4) Article II, Section 2.03, by failing to supply the IBEW weekly time reports listing the name and gross wages of each employee. The IBEW requested the following remedies for the above-listed violations: (1) back pay through December 2000 in the amount of $943,883.66 to ACEC employees identified (by employee number only) in the audit report as having not received wages at the contractual journeyman rate; (2) back pay through December 2000 in the amount of $781,164.82 to the individuals on the IBEW's "out-of-work" list who were denied employment because of ACEC's failure to hire through the IBEW's hiring hall; (3) the identification by name, address, and telephone number all of the electrician employees of ACEC from December 27, 1996 through the present; and (4) an audit of ACEC's records for January 2001 through the present.

The Labor/Management Committee is comprised of eight members: Russ Bertch, Chairman; Barry Thomas; Kevin McKenzie; Ron Olson; Chris Kjeld; Russ Cobb; Steve McBride; and Ryan Pendergraft, Secretary. Bertch, Thomas and McKenzie are the three voting members representing the IBEW's interests. Olson, Kjeld, and Cobb are the three voting members representing employers' interests. McBride is the alternate and did not

vote at the July 8, 2003 hearing. Pendergraft, a representative of NECA, is a non-voting member. Of the six voting members of the Labor/Management Committee, five are current, dues-paying members of the IBEW: Bertch, Kjeld, Thomas, McKenzie, and Cobb.

On July 11, 2003, the Labor/Management Committee sent a letter to Tyler in which it stated the following:

> On behalf of the Waterloo Division, NECA/IBEW Local Union 288 labor-management committee, I would like to inform you on [sic] the ruling that was made regarding your client, All Counties [sic] Electric Company (ACEC).
>
> After careful consideration of the evidence presented, the Labor Management Committee hereby finds as follows:
>
> ACEC during the period of the audit from January 1, 1997 to December 31, 2000 has violated the wage and hiring provisions under Articles III, IV, and V of the collective bargaining agreement, and ACEC has violated Article II, Section 2.03 of the collective bargaining agreement regarding weekly time reports. The committee also finds that ACEC has continued to violate the provisions of these articles and sections of the agreement.
>
> ACEC is liable for back wages in the amount of $943,883.66 to the ACEC employees as demonstrated by the Union, and in the amount of $781,164.82 to the persons on the Local Union's 'out-of-work' list as demonstrated by the Union, for a total amount of $1,725,048.48 and that [sic] ACEC shall pay this sum immediately to IBEW Local Union 288.
>
> ACEC shall immediately supply the union with the names and addresses of all employees identified only by ACEC employee ID number on the audit. ACEC shall supply the union with the names and addresses of all current ACEC employees. ACEC shall submit to an additional audit to determine the additional amounts owed in back wages to the persons

employed by ACEC and to the persons on the local union's 'out-of-work' list for the time period of January 1, 2001 - May 31, 2003. The auditor is to be chosen by IBEW Local Union 288, and the expense of the audit shall be borne by ACEC.

If there are any questions regarding this matter, please contact the Iowa Chapter, NECA Office, or the IBEW Local Union 288 Office.

Jt. Ex. J.

## V. CONCLUSIONS OF LAW

ACEC claims the May 13, 2003 CIR arbitration award and the July 11, 2003 Labor/Management Committee arbitration award must be vacated because ACEC was not bound to any of the collective bargaining agreements at issue in this case. Specifically, ACEC contends the notice provisions of the 1996-1997, 1997-1999, 1998-2000 and 2000-2003 collective bargaining agreements between NECA and the IBEW were such that CCT and ACEC were not bound to provide notice to terminate the collective bargaining agreements. Furthermore, even if ACEC was required to provide notice of its intent to terminate a collective bargaining agreement, ACEC asserts the IBEW received notice of ACEC's intent to terminate on April 4, 1997, November 6, 1997, October 13, 1998, March 1, 2001 and February 28, 2003. Thus, ACEC claims there was no collective bargaining agreement in place between ACEC and the IBEW when the CIR ruled ACEC is bound by the 2003-2006 collective bargaining agreement and when the Labor/Management Committee awarded back pay to the IBEW. ACEC urges even if the court finds ACEC is bound by the 1996-1997, 1997-1999, 1998-2000 and 2000-2003 collective bargaining agreements, the arbitration awards are not derived from the essence of those collective bargaining agreements and the court should vacate the awards. The IBEW responds ACEC did not properly terminate its assent to be bound by any of the collective bargaining agreements between the IBEW and NECA and therefore the CIR's

and the Labor/Management Committee's arbitration awards should be upheld and enforced. The IBEW further contends the arbitration awards are derived from the essence of the 1996-1997, 1997-1999, 1998-2000 and 2000-2003 collective bargaining agreements and therefore such awards should be enforced.

### A. Did ACEC's Alter Ego Status End When CCT Dissolved?

As an initial matter, the court notes ACEC continues to take the position it is not bound to any collective bargaining agreement in effect after CCT ceased doing business (in early 1997) on the grounds that ACEC's alter ego status with CCT ended at that time. It is undisputed, however, that Judge Melloy affirmed the Labor/Management Committee's January 23, 1997 finding that ACEC was an alter ego of CCT. The Eighth Circuit Court of Appeals affirmed this decision. *See Int'l Bhd. of Elec. Workers, Local 288 v. CCT Corp. d/b/a Black Hawk Elec. Co.*, No. 98-3734 (8th Cir. Dec. 4, 2000). Further, it is uncontroverted that the Regional Director of the NLRB ruled in his January 27, 1999 Decision and Order in Cases 18-RM-1344, 18-RM-1345 and 18-RM-1346 that ACEC, by virtue of its alter ego status, became party to CCT's contracts and to the Section 9(a) relationship established in 1988. The Regional Director further ruled ACEC can get out of those obligations "only with a proper showing of loss of majority support, not simply by closing or selling off CCT." ACEC appealed this decision to the NLRB and the NLRB denied review. *See All County Elec. Co. et al.*, 332 N.L.R.B. 863 (2000). The record does not reflect ACEC sought further review of this decision.[13] Moreover, the record

---

[13] Furthermore, the court finds in light of these rulings, there is absolutely no basis for ACEC's persistent argument it was not or is no longer bound by the collective bargaining agreements with the IBEW because it was not or is no longer an alter ego of CCT. Thus, if ACEC continues to make this argument, which is wholly without merit, ACEC's attorneys should be prepared to face sanctions under Rule 11 of the Federal Rules
(continued...)

makes clear ACEC's attempt to decertify the IBEW as its collective bargaining representative failed. The court therefore finds ACEC's argument CCT's sale and/or cessation of doing business terminated ACEC's relationship with or obligations to the IBEW is without merit.

### B. Was ACEC Bound by the Provisions of Any of the Collective Bargaining Agreements at Issue?

The next issue the court will address, which is relevant to both cases currently under consideration, is whether CCT's and ACEC's letters to the IBEW dated April 4, 1997, November 6, 1997, October 13, 1998, March 1, 2001 and February 28, 2003 had the effect of terminating any of the collective bargaining agreements at issue.

On July 11, 2003, the Labor/Management Committee awarded to the IBEW back pay from January 1, 1997, through December 31, 2000, under the 1996-1997, 1997-1999, 1998-2000 and 2000-2003 collective bargaining agreements. ACEC asks the court to rule ACEC never was bound by the 1996-1997, 1997-1999, 1998-2000 and 2000-2003 collective bargaining agreements and therefore the July 11, 2003 Labor/Management Committee's arbitration award must be vacated.[14] If the court determines ACEC was bound by the 1996-1997 collective bargaining agreement, ACEC claims: (1) CCT's letter to the IBEW on April 4, 1997, notified the IBEW of CCT's (and thus ACEC's) intent to

_____

[13](...continued)
of Civil Procedure.

[14] The court notes ACEC long ago waived its right to challenge the determinations it (1) is bound by the 1996-1997 collective bargaining agreement and (2) is subject to the January 23, 1997 arbitration award arising out of the 1996-1997 collective bargaining agreement. *See Local 288 Int'l Bhd. of Elec. Workers v. CCT Corp d/b/a Black Hawk Elec. Co.*, No. C97-2036-LRR (N.D. Iowa Sept. 29, 1998) (order granting the IBEW's motion for summary judgment and denying ACEC's and CCT's motions to dismiss and for summary judgment).

terminate the 1996-1997 collective bargaining agreement; (2) CCT's November 6, 1997 letter notified the IBEW of CCT's (and therefore ACEC's) intent to terminate the 1997-1999 collective bargaining agreement; (3) ACEC's October 13, 1998 letter notified the IBEW of ACEC's intent to terminate the 1998-2000 collective bargaining agreement; and (4) ACEC's March 1, 2001 and February 28, 2003 letters notified the IBEW of ACEC's intent to terminate the 2000-2003 collective bargaining agreement.

The May 13, 2003 CIR award was based on the 2000-2003 collective bargaining agreement. ACEC also takes the position the letters referenced above terminated any collective bargaining agreement in effect between ACEC and the IBEW. Thus, ACEC claims there was no collective bargaining agreement in place between ACEC and the IBEW when the IBEW submitted the issue of renegotiation of certain terms of the collective bargaining agreement to the CIR pursuant to section 1.02(d) of the 2000-2003 collective bargaining agreement. ACEC therefore argues the court cannot enforce the May 13, 2003 arbitration award because the issues were not properly arbitrated.

The Eighth Circuit Court of Appeals has not explicitly ruled, in the context of interpreting termination provisions of collective bargaining agreements, that courts must strictly enforce the terms of a collective bargaining agreement when those terms are unambiguous. In *Local 257, International Brotherhood of Electrical Workers v. Grimm*, 786 F.2d 342, 346 (8th Cir. 1986), however, the Eighth Circuit Court of Appeals noted the employer's effort to terminate a Letter of Assent was ineffective where it fell short of fulfilling the termination procedure set out in the Letter of Assent, which called for written notice by the employer to NECA and to the union at least 150 days prior to the anniversary date of the collective bargaining agreement. Thus, it appears the Eighth Circuit Court of Appeals favors strict enforcement of the terms of a collective bargaining agreement where the terms of the agreement make clear the procedures for terminating such agreement.

This proposition finds additional support in decisions by the Sixth, Seventh and Ninth Circuit Courts of Appeals. Each of these courts has ruled where the terms of a collective bargaining agreement governing the termination of such agreement are unambiguous, courts must strictly enforce those terms. *See Contempo Design, Inc. v. Chi. & N.E. Ill. Dist. Council of Carpenters*, 226 F.3d 535, 546 (7th Cir. 2000) (holding termination provision of collective bargaining agreement should be strictly construed because "the terms of a collective bargaining agreement are to be enforced strictly when the terms are unambiguous"); *Trs. of the B.A.C. Local 32 Ins. Fund v. Fantin Enters., Inc.*, 163 F.3d 965, 969 (6th Cir. 1998) ("Unless ambiguous, a collective bargaining agreement is limited to the language contained in its four corners. . . . When . . . clear and specific language in a labor agreement is at issue, federal courts are uniform in their strict interpretation of such language."); *Irwin v. Carpenters Health & Welfare Trust Fund*, 745 F.2d 553, 557 (9th Cir. 1984) (recognizing the federal policy of strictly enforcing unambiguous terms in labor agreements because, "[j]udicial rewriting of labor contract terms that are clear in both the language used and the situations addressed would undermine this private bargaining process which federal labor policy promotes").

### 1. The 1997-1999 and 1998-2000 Collective Bargaining Agreements

The Letter of Assent requires an employer to give to the IBEW sixty days' written notice of its intent to terminate its assent to be bound by a subsequent collective bargaining agreement between the IBEW and NECA. Thus, by its very terms, the Letter of Assent does not allow an employer to terminate a collective bargaining agreement already in effect. In order to validly terminate its assent to be bound by the 1997-1999 collective bargaining agreement, ACEC must have provided written notice of such intent to the IBEW by April 2, 1997. Likewise, in order to validly terminate its assent to be bound by the 1998-2000 collective bargaining agreement, ACEC must have provided written notice

of such intent to the IBEW by April 2, 1998.

The court has reviewed the letters sent by CCT on April 4, 1997, and November 6, 1997, and the letter ACEC sent on October 13, 1998, as set forth above. The court concludes none of these letters was timely. Furthermore, none of the letters referenced either the Letter of Assent or ACEC's intent to terminate any collective bargaining agreement. Thus, ACEC did not effectively terminate the 1997-1999 and 1998-2000 collective bargaining agreements.[15]

### 2. The 2000-2003 Collective Bargaining Agreement

The court next reviewed the March 1, 2001 and February 28, 2003 letters which ACEC contends terminated its obligations under the 2000-2003 collective bargaining agreement. Again, the court notes the Letter of Assent does not allow an employer to terminate a collective bargaining agreement already in effect. In order to validly terminate its assent to be bound by the 2000-2003 collective bargaining agreement, ACEC must have provided written notice of such intent to the IBEW by April 2, 2000. In Trost's March 1, 2001 letter to Kurtenbach and Moon, which ACEC argues validly terminates the 2000-2003 collective bargaining agreement, Trost argued ACEC had never consented to be represented by NECA and stated, "ACEC hereby gives Notice that it withdraws to itself its Bargaining Rights, if any, with respect to the representation granted by the National

---

[15] ACEC also attempts to challenge the validity of the 1998-2000 and 2000-2003 collective bargaining agreements on the ground that ACEC submitted a petition for decertification to the NLRB in April of 1999. ACEC contends this put the IBEW on notice that there "would be a question as to whether the [IBEW] still enjoyed 'majority' status, and [ACEC] might have a basis for refusing to bargain." However, the Regional Director of the NLRB denied ACEC's petition for decertification and that decision was affirmed by the NLRB on appeal. ACEC is bound by the ruling of the NLRB. The court therefore finds ACEC's attempt at decertification has no bearing on the issue of the validity of either the 1998-2000 or the 2000-2003 collective bargaining agreement.

Labor Relations Board of Local 288 of the IBEW, for employees involved in the Waterloo operation." The March 1, 2001 letter was not timely. Further, it did not mention either the Letter of Assent or the 2000-2003 collective bargaining agreement. The court therefore finds this letter did not comply with the requirements set forth either in the Letter of Assent or in the 2000-2003 collective bargaining agreement, both of which require timely written notice of an intent to terminate such agreement.

Trost's February 28, 2003 letter was sent in response to a letter Trost had received from Maas in which Maas asked ACEC to negotiate the terms of a new collective bargaining agreement between ACEC and the IBEW.[16] Trost informed Maas in this letter that ACEC believed the fact CCT ceased doing business terminated ACEC's alter ego status and ACEC therefore no longer was bound to any collective bargaining agreement. Trost also stated it was ACEC's position the *Deklewa* decision required only that ACEC give the IBEW timely notice of its intent to terminate ACEC's relationship with the IBEW. It is clear Trost's letter informed Maas and the IBEW once again that ACEC took the position it was not bound by any collective bargaining agreement because CCT no longer was in existence. It also is clear from Trost's letter that ACEC believed it could terminate any collective bargaining agreement unilaterally by giving notice of ACEC's intent to terminate under the Third Circuit Court of Appeals' decision in *Deklewa*, 843 F.2d 770. However, the letter, again untimely, makes no reference to the 2000-2003 collective bargaining agreement or to ACEC's intent not to be bound by the 2000-2003 collective bargaining agreement. Thus, Trost's February 28, 2003 letter to Maas did not operate to terminate the 2000-2003 collective bargaining agreement.

---

[16] It is clear from the IBEW's offer to negotiate directly with ACEC the terms of the 2003-2006 collective bargaining agreement that the IBEW had, at some point, determined NECA no longer was authorized to bargain on behalf of ACEC.

Even if the court were to find this letter constitutes an effective termination of the 2000-2003 collective bargaining agreement, the terms of the 2000-2003 collective bargaining agreement make clear any notice of termination works to preclude the formation of subsequent collective bargaining agreement. Notice of termination does not relieve either party of its obligations under the collective bargaining agreement then in effect. Thus, because ACEC had not timely or properly notified the IBEW of its intent to terminate the Letter of Assent or any collective bargaining agreements to which ACEC was bound prior to the 2003-2006 collective bargaining agreement, the court finds ACEC was bound by the 1996-1997, 1997-1999, 1998-2000 and 2000-2003 collective bargaining agreements.

## C. Is Enforcement of the Arbitration Awards Appropriate?

In the cases presently before the court, ACEC contends the May 13, 2003 CIR and July 11, 2003 Labor/Management Committee arbitration awards are not derived from the essence of the relevant collective bargaining agreements.

The IBEW responds the May 13, 2003 CIR and July 11, 2003 Labor/Management Committee arbitration awards are derived from the essence of the collective bargaining agreements and therefore they should be upheld and enforced.

The actions arise under section 301 of the Act. Section 301 of the Act creates an "independent source of federal jurisdiction for district courts to enforce arbitration awards." *Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.,* 380 F.3d 1084, 1097 (8th Cir. 2004). Pursuant to section 301, the court must "review an arbitrator's award to determine whether: (1) the parties agreed to arbitrate; and (2) the arbitrator had the power to make the award." *Excel Corp. v. United Food & Commercial Workers Int'l Union, Local 431*, 102 F.3d 1464, 1467 (8th Cir. 1996). A labor arbitration award is subject to great deference. *Hope Elec. Corp.*, 380 F.3d at 1100. "'The refusal

of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.'" *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)). Even if the term "arbitration" does not appear in the collective bargaining agreement, the arbitrator's award will be enforced because, as the Supreme Court has recognized, "the policy of the [Act] 'can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.'" *Gen. Drivers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963) (per curiam) (quoting *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 566 (1960)).

The court will refuse to enforce an arbitration award only if the award does not draw its essence from the collective bargaining agreement. *Hope Elec. Corp.*, 380 F.3d at 1100. In making such a determination, the collective bargaining agreement "must be broadly construed with all doubts resolved in favor of the arbitrator's award." *Id.* In fact, "[a] reviewing court cannot overturn an arbitrator's award even if the court is convinced the arbitrator committed serious error so long as the arbitrator was arguably construing or applying the contract." *Excel Corp.*, 102 F.3d at 1467 (citing *Misco, Inc.*, 484 U.S. at 38). "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misrepresentation of the contract." *Misco, Inc.*, 484 U.S. at 36.

"Where the awards do not draw their essence from the parties' underlying agreements, the arbitrators, in effect, acted arbitrarily and dispensed their 'own brand of industrial justice' or acted outside the scope of their contractual authority." *Hope Elec. Corp.*, 380 F.3d at 1100 (quoting *Lackawanna Leather Co. v. United Food & Commercial*

*Workers Int'l Union*, 706 F.2d 228, 230-31 (8th Cir. 1983)). Thus, the court may vacate an arbitration award "'when the award does not derive its essence from the collective bargaining agreement, or when the arbitrator ignores the plain language of the contract.'" *Excel Corp.*, 102 F.3d at 1467 (quoting *Keebler Co. v. Milk Drivers & Dairy Employees Union, Local No. 471*, 80 F.3d 284, 287 (8th Cir. 1996)). An arbitrator may look to sources outside of the collective bargaining agreement in order to aid the interpretation of the agreement. *Keebler Co.*, 80 F.3d at 288. "'The arbitrator has a right to interpret and apply the contract and in doing so to consider not only the formal agreement but collateral materials as well including past prevailing practices in the company plant.'" *Id.* (quoting *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters*, 627 F.2d 853, 857 (8th Cir. 1980)). However, the arbitrator may not amend the contract. *Id.* (citing *Manhattan Coffee Co. v. Int'l Bhd. of Teamsters, Local No. 688*, 743 F.2d 621, 623 (8th Cir. 1984)). Furthermore, "[a]n arbitrator may not ignore the plain language of the contract because that would, in effect, amend the contract." *Id.* at 288 n.4. The Eighth Circuit Court of Appeals has refused to enforce an arbitration award when the award does not draw its essence from the parties' underlying agreement because "when the award is not derived from the essence of the contract, [the court] cannot conclude that the parties actually agreed to arbitrate disputes regarding the subject matter of the award." *Hope Elec. Corp.*, 380 F.3d at 1101.

## 1. *Enforcement of the Arbitration Award of the CIR*

Because the court has determined ACEC was, in fact, bound by the terms of each of the collective bargaining agreements at issue in this case, the court must address ACEC's alternative argument that the arbitration award issued by the CIR must be vacated because it does not draw its essence from the 2000-2003 collective bargaining agreement. ACEC argues the award issued by the CIR does not draw its essence from the 2000-2003

collective bargaining agreement because the CIR ignored the plain language of the agreement, which required that one party provide notice in writing of its intent to terminate the agreement at least ninety days before the end of the then-current collective bargaining agreement. ACEC contends it plainly had given to the IBEW notice of its intent to terminate any agreement in effect at the time the IBEW submitted the disputed issues to the CIR. ACEC contends the CIR ignored the plain language of the 2000-2003 collective bargaining agreement that provides for termination and ordered the implementation of yet another agreement between ACEC and the IBEW. As a result, ACEC maintains the court must vacate the award of the CIR.

The IBEW argues in response the 2000-2003 collective bargaining agreement contained an enforceable interest arbitration clause and the IBEW submitted the issues to the CIR in accordance with this clause. The IBEW therefore asserts the CIR had jurisdiction to consider the issues before it and the CIR's award draws its essence from the collective bargaining agreement. The IBEW further argues ACEC waived its right to challenge the CIR's award by failing to appear at the arbitration.

The court finds ACEC's argument it should vacate the CIR's award in favor of the IBEW requiring that ACEC execute the 2003-2006 collective bargaining agreement to be without merit. ACEC does not dispute the 2000-2003 collective bargaining agreement includes Section 1.02(d), which provides:

> (d) Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations, may be submitted jointly or unilaterally to the Council for adjudication. Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date. The Council's decision shall be

final and binding.

The parties do not dispute Section 1.02(d) is an interest arbitration clause. "An interest arbitration clause is one in which the parties agree to arbitrate disputes over the terms of a new collective bargaining agreement in the event of a deadlock." *Hope Elec. Corp.*, 380 F.3d at 1089 (quoting *Sheet Metal Workers' Int'l Ass'n, Local 14 v. Aldrich Air Conditioning, Inc.*, 717 F.2d 456, 456 (8th Cir. 1993)) (internal quotation marks omitted). The Eighth Circuit Court of Appeals has recognized:

> When a dispute is properly submitted to arbitration pursuant to an agreement to arbitrate in a collective bargaining agreement, the resulting arbitration award is ordinarily entitled to extreme judicial deference. *See American Nat'l Can Co. v. United Steelworkers*, 120 F.3d 886, 889-90 (8th Cir. 1997) (discussing the "*Steelworkers* Trilogy" and the well-established standard of extreme judicial deference to an arbitrator's award). Moreover, our court has specifically recognized that "once included in a collective bargaining agreement, . . . interest arbitration clauses generally are enforceable." *Sheet Metal Workers' Int'l Ass'n, Local 14 v. Aldrich Air Conditioning, Inc.*, 717 F.2d 456, 458-59 (8th Cir. 1983) (holding that, while interest arbitration clauses generally are enforceable, the inclusion of an interest arbitration clause in the *successor* collective bargaining agreement will not be enforced because of the potential for collective bargaining agreements to become self-perpetuating). We therefore afford interest arbitration awards the extreme judicial deference approved by the Supreme Court in the *Steelworkers* Trilogy.

*Local Union 257, Int'l Bhd. of Elec. Workers v. Sebastian Elec.*, 121 F.3d 1180, 1184 (8th Cir. 1997). Thus, the interest arbitration clause included in the 2000-2003 collective bargaining agreement is enforceable. The IBEW had the right to submit the issue of the

terms of the 2003-2006 collective bargaining agreement to the CIR.[17] ACEC waived its right to challenge the substance of the CIR's award by failing to appear at the arbitration or to make any other effort to represent its interests in the arbitration. The court therefore declines to invalidate the CIR's arbitration award binding ACEC to the 2003-2006 collective bargaining agreement. The court finds the award draws its essence from the terms of the 2000-2003 collective bargaining agreement because the award is the result of the application of the interest arbitration clause included therein.

The court notes, however, that the 2003-2006 collective bargaining agreement the CIR ordered ACEC and the IBEW to implement also contains an interest arbitration clause. The Eighth Circuit Court of Appeals has made it clear that:

> As a protection for employers and employees against the perpetuation of agreements and the unwanted imposition of multiple generations of successor agreements, this Court has determined that interest arbitration clauses are not enforceable to "perpetuate the inclusion of the [interest arbitration] clause in successive bargaining agreements." *Aldrich Air Conditioning,* 717 F.2d at 458 (quoting *NLRB v. Columbus Printing Pressmen & Assistants' Union No. 252*, 543 F.2d 1161, 1170 (5th Cir. 1976)).

*Hope Elec. Corp.*, 380 F.3d at 1089 n.3. Accordingly, the court holds the IBEW cannot use the interest arbitration clause included in the 2003-2006 collective bargaining agreement to impose a successor collective bargaining agreement upon ACEC without its

---

[17] The court notes, even if ACEC had given timely and proper notice of its intent to terminate any collective bargaining agreement into which IBEW sought to enter with ACEC subsequent to the 2000-2003 collective bargaining agreement, the interest arbitration clause at issue still would be enforceable in this case. "[I]nterest arbitration clauses may survive termination, and employers and eligible workers may be subject to the imposition of at least one undesired 'successor' agreement through interest arbitration." *Hope Elec. Corp.,* 380 F.3d at 1089 n.3 (citing *Sebastian Elec.*, 121 F.3d at 1185-86).

consent.

## 2. Enforcement of the Arbitration Award of the Labor/Management Committee

The court next turns to the issue of whether the July 11, 2003 Labor/Management Committee's arbitration award drew its essence from the 1996-1997, 1997-1999, 1998-2000 and 2000-2003 collective bargaining agreements. The Labor/Management Committee ruled ACEC is liable to the IBEW for back pay in the amount of $1,725,048.48. Of that total, $943,883.66 is owed to ACEC employees and $781,164.82 is owed to the individuals on the IBEW's "out-of-work" list. In making such award, the Labor/Management Committee apparently adopted the IBEW's method for determining the amount of back pay owed; the Labor/Management Committee did not include its analysis in arriving at such an amount. The court notes, however, "'arbitrators are not required to elaborate their reasoning supporting an award'. . . ." *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 802 (8th Cir. 2004), *cert. denied,* ___ S. Ct. ___, 2005 WL 544104 (Apr. 25, 2005) *and cert. denied,* ___ S. Ct. ___, 2005 WL 282139 (May 2, 2005) (quoting *El Dorado Sch. Dist. #15 v. Cont'l Cas. Co.*, 247 F.3d 843, 847 (8th Cir. 2001)).

ACEC first contends it was denied due process because five of the six voting members of the Labor/Management Committee were current, dues-paying members of the IBEW and the IBEW attempted to prove its damages through hearsay evidence and therefore the court should vacate the arbitration award. The Eighth Circuit Court of Appeals has recognized arbitration panels need not afford parties the same process due to them in court:

> In the arbitration setting [parties] have almost none of the protections that fundamental fairness and due process require for the imposition of [money damages]. Discovery is

38

> abbreviated if available at all. The rules of evidence are
> employed, if at all, in a very relaxed manner. The factfinders
> (here the panel) operate with almost none of the controls and
> safeguards present in traditional litigation.

*Id.* at 803 (quoting *Lee v. Chica*, 983 F.2d 883, 889 (8th Cir. 1993) (Beam, J., concurring

in part and dissenting in part)) (quotation marks omitted). Arbitration does not require the

"controls and safeguards present in traditional litigation" because arbitration "'is designed

primarily to avoid the complex, time-consuming and costly alternative of litigation.'" *Id.*

(quoting *Hoffman v. Cargill Inc.*, 236 F.3d 458, 462 (8th Cir. 2001)). Each of the

collective bargaining agreements between the IBEW and NECA provides the

Labor/Management Committee shall consist of three individuals representing the IBEW

and three individuals representing employers' interests. Jt. Ex. L at 4; Jt. Ex. M at 4; Jt.

Ex. N at 4; Jt. Ex. O at 3. At the July 8, 2003 arbitration hearing, the Labor/Management

Committee did have three members representing the IBEW's interests and three members

representing employers' interests. There is no provision in any of the collective bargaining

agreements that mandates the employer representatives of the Labor/Management

Committee cannot be or may never have been members of the IBEW. Therefore, the court

finds ACEC was not entitled to the process it contends it was due, i.e., an arbitration panel

with only three current members of the IBEW. Furthermore, the court finds ACEC was

not denied due process because the IBEW's damages were proven through hearsay

evidence. As the Eighth Circuit Court of Appeals noted, the rules of evidence may not be

used at all in an arbitration hearing. *Stark*, 381 F.3d at 803. None of the collective

bargaining agreements states the rules of evidence shall apply to arbitration proceedings

before the Labor/Management Committee. Therefore, the court finds the

Labor/Management Committee was not required to adhere to the rules of evidence and

thus, the IBEW's hearsay evidence was sufficient to prove its grievance and its method of

calculating the back pay award.

ACEC next contends the arbitration award should be vacated because the IBEW is not the real party in interest. Rather, ACEC asserts the individual employees who are owed the back pay should be attempting to enforce the award. At the arbitration hearing, the IBEW argued the IBEW is the real party in interest because it is enforcing on behalf of its union members the collective bargaining agreement to which the IBEW is a party. The court finds ACEC's argument to be without merit. The court finds the IBEW is the real party in interest because it is the party to the collective bargaining agreements sought to be enforced or terminated and upon which the July 11, 2003 arbitration award is based. The individual employees are not named as parties to any of the collective bargaining agreements.

ACEC argues the arbitration award should be vacated because the Labor/Management Committee failed to determine which party, ACEC or the IBEW, is responsible for the tax liability associated with paying the back wages now determined to be due. As ACEC repeatedly has pointed out, the Labor/Management Committee was asked by the court to determine "the method by which to calculate the amount of the IBEW's back pay award and the remaining issues raised by [ACEC]." The Labor/Management Committee also had before it various grievances filed by the IBEW. ACEC did not raise the issue of tax liability in any proceeding prior to arbitration or at the hearing before the Labor/Management Committee. Therefore, the court declines to vacate the arbitration award on that basis.

ACEC contends the arbitration award must be vacated for various reasons because the award does not draw its essence from the collective bargaining agreements. First, ACEC argues without having the 1996-1997, 1997-1999, 1998-2000 and 2000-2003 collective bargaining agreements before it, no award the Labor/Management Committee

granted could draw its essence from these collective bargaining agreements. Second, ACEC contends it demonstrated it owes no back pay to the IBEW using its auditing method. Third, ACEC contends employees were attributed back pay in amounts inappropriate under the IBEW's accounting method.[18] ACEC alternatively asserts if the court does not vacate the award, the arbitration award should be modified because the IBEW failed to mitigate its damages relating to the individuals on the IBEW's "out-of-work" list and because the Labor/Management Committee awarded back pay based solely on the wage rate for journeymen rather than apprentices.

The parties stipulate none of the collective bargaining agreements relevant to the issues before the Labor/Management Committee was presented to the Labor/Management Committee at the hearing. Thus, ACEC contends any arbitration award from the Labor/Management Committee could not have derived its essence from the collective bargaining agreements at issue. The court rejects ACEC's argument. First, the court notes the Labor/Management Committee exists for the limited purpose of resolving disputes between the parties to the collective bargaining agreements at issue in this case. It does not exist as a general adjudicative body over disputes involving other collective bargaining agreements between other parties. Therefore, the members of the Labor/Management Committee were likely to be familiar with the terms of the relevant collective bargaining agreements. Moreover, even if the members of the Labor/Management Committee had no knowledge of the terms of the collective bargaining agreements at issue, the court notes the IBEW summarized the relevant sections of the collective bargaining agreements in its brief in support of its grievance to the

---

[18] The IBEW explained in its Post-Trial Brief that the employee identification numbers on the audit were incorrect, but the sum of the back pay awards to employees, $943,883.66, is correct.

Labor/Management Committee and both parties offered their interpretations of the relevant sections in their arguments to the Labor/Management Committee. The court already has recognized arbitrators' practices of relying on hearsay evidence and the parties' arguments are sufficient to support an award. Therefore, the court finds the fact the Labor/Management Committee did not have an actual copy of the 1996-1997, 1997-1999, 1998-2000 and 2000-2003 collective bargaining agreements is not fatal to the Labor/Management Committee's award.

The court is cognizant of the fact it is not authorized to review the merits of the Labor/Management Committee's arbitration award even though ACEC alleges the award rests on errors of fact or on misrepresentation of the collective bargaining agreement. *See Misco, Inc.*, 484 U.S. at 36. Furthermore, the court recognizes it must construe the collective bargaining agreements broadly and resolve all doubts in favor of the Labor/Management Committee's arbitration award. *See Hope Elec. Corp.*, 380 F.3d at 1100. The court cannot vacate the award as long as the Labor/Management Committee was arguably construing or applying the collective bargaining agreement, even if the court is convinced the Labor/Management Committee committed serious error. *See Excel Corp.*, 102 F.3d at 1467 (citing *Misco, Inc.*, 484 U.S. at 38). Thus, the court finds ACEC's arguments are without merit. Even if the court were convinced the Labor/Management Committee erred in: (1) choosing the IBEW's auditing method rather than ACEC's auditing method; (2) attributing back pay in amounts inappropriate under the IBEW's accounting method; or (3) awarding back pay at the journeyman rate rather than the apprentice rate, the court cannot say the Labor/Management Committee was not arguably construing or applying the collective bargaining agreements in any of these determinations. Therefore, the court finds vacation of the arbitration award on the basis the Labor/Management Committee chose the IBEW's auditing method rather than ACEC's

auditing method is inappropriate. The court also finds modification of the arbitration award is inappropriate based on the facts the IBEW failed to mitigate its damages and the back pay was awarded to all of ACEC's employees at the wage rate of a journeyman.

ACEC also moves the court to modify the arbitration award because there is no basis in the collective bargaining agreement granting to the IBEW the sole discretion to choose an auditor and requiring ACEC to pay the entire cost of the auditor. A court cannot disturb an arbitrator's award if the arbitration panel interpreted ambiguous language in the collective bargaining agreement, even if the arbitrator's interpretation was incorrect. *Keebler Co.*, 80 F.3d at 288. However, "[a]n arbitrator is not free to ignore or abandon the plain language of the parties' agreement." *Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, 1065 (8th Cir. 2003) (citing *Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers (PACE), Local 7-0159*, 309 F.3d 1075, 1081 (8th Cir. 2002)). Furthermore, "'if an arbitrator attempts to interpret a written agreement that is silent or ambiguous without considering the parties' agreement, [the arbitrator's] award will fail to draw its essence from the agreement.'" *Boise Cascade Corp.*, 309 F.3d at 1081 (quoting *Bureau of Engraving, Inc. v. Graphic Communications Int'l Union, Local 1B*, 164 F.3d 427, 429 (8th Cir. 1999)). An arbitrator's duty is to apply the parties' agreement in accordance with the parties' intent. *Id.* at 1081-82 (citing *Bureau of Engraving, Inc.*, 164 F.3d at 429). In order to determine the parties' intent in the absence of clear language in the collective bargaining agreement, the arbitrator may consider past practice and bargaining history. *Gas Aggregation Servs., Inc.*, 319 F.3d at 1065 (quoting *Boise Cascade Corp.*, 309 F.3d at 1081-82). The Eighth Circuit Court of Appeals has held the following regarding the arbitrator's obligation to consider the parties' intent:

When the arbitrator construed an ambiguous provision without

> seeking the parties' guidance as to its intent and without
> evidence of their relevant past practices, he acted without
> considering the entire agreement. In these circumstances we
> do not simply disagree with his interpretation of the
> Agreement; we conclude that he dispensed his own brand of
> industrial justice, and his award cannot be said to draw its
> essence from the collective bargaining agreement.

*Boise Cascade Corp.*, 309 F.3d at 1082 (quoting *Int'l Woodworkers v. Weyerhaeuser Co.*, 7 F.3d 133, 136-37 (8th Cir. 1993)).

In this case, the 1996-1997, 1997-1999, 1998-2000 and 2000-2003 collective bargaining agreements are silent as to which party may select an auditor and which party is to pay for the audit when there is a dispute. The Labor/Management Committee held the IBEW may select any auditor of its choice to conduct the audit of ACEC's books as to the back pay owed between January 1, 2001, and May 31, 2003. The Labor/Management Committee further held ACEC must pay for the audit. A review of the evidence presented to the Labor/Management Committee and the transcript of the July 8, 2003 hearing demonstrates the Labor/Management Committee did not seek guidance as to the parties' intent and had no evidence before it regarding their relevant past practices. Therefore, the court finds the Labor/Management Committee's holdings on this issue do not draw their essence from any of the 1996-1997, 1997-1999, 1998-2000 or 2000-2003 collective bargaining agreements and therefore the arbitration award must be modified to excise this portion of the award. On or before June 24, 2005, the parties shall choose a mutually agreeable auditor to conduct the audit of ACEC's books to determine the back pay owed to the IBEW between January 1, 2001 and May 31, 2003.[19] The auditor shall

---

[19] If the parties cannot choose a mutually agreeable auditor on or before June 24, 2005, each party shall submit to the court on that date the credentials of the auditor of the

(continued…)

use the method employed by the IBEW as to the January 1, 1997 through December 31, 2000 damages and accepted by the Labor/Management Committee in its letter dated July 11, 2003. Such audit shall be completed by November 28, 2005, and the auditor's findings shall be presented to the court so the court may enter judgment in the appropriate amount.

## VI. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

(1) In case C97-2036-LRR, the IBEW prevails on its claim against ACEC.[20]

  (a) The IBEW is entitled to back pay damages from ACEC for the period beginning January 1, 1997, and ending December 31, 2000, in the amount of $1,725,048.48, to be paid immediately, broken down as follows:

    (i) $943,883.66 for ACEC's employees; and

    (ii) $781,164.82 for the individuals on the IBEW's "out-of-work" list.

  (b) ACEC shall comply immediately and fully with the terms and conditions of the January 23, 1997 and July 11, 2003 Labor/Management Committee arbitration awards with the exception noted herein.

  (c) On or before June 24, 2005, the parties shall choose a mutually

---

[19](…continued)
party's choice and the court shall choose the auditor.

[20] In case C03-2063-LRR, ACEC fails on its claim and the IBEW prevails on its counterclaim. The IBEW's counterclaim seeks relief identical to the relief sought and received in case C97-2036-LRR.

agreeable auditor to conduct an audit of ACEC's books to determine the back pay owed to the IBEW between January 1, 2001, and May 31, 2003. The auditor shall use the method employed by the IBEW as to the January 1, 1997 through December 31, 2000 damages and accepted by the Labor/Management Committee in its letter dated July 11, 2003. Such audit shall be completed by November 28, 2005, and the auditor's findings shall be presented to the court.

(d)     ACEC shall bear the costs of the litigation.

(e)     The supersedeas bond shall immediately be applied to the payment currently due by ACEC.

(f)     The Clerk of Court shall enter judgment accordingly.

(2)     In case C03-2052-LRR, ACEC fails on its claim against the IBEW and the IBEW prevails on its counterclaim against ACEC.

(a)     ACEC is bound to comply with the 2003-2006 collective bargaining agreement between the IBEW and ACEC with the exception noted herein.

(b)     ACEC shall comply immediately and fully with the terms and conditions of the May 13, 2003 CIR arbitration award.

(c)     ACEC shall bear the costs of the litigation.

(d)     The Clerk of Court shall enter judgment accordingly.

(3)     ACEC's Motions for Summary Judgment (C97-2036-LRR, docket no. 98; C03-2052-LRR, docket no. 19; C03-2063-LRR, docket no. 28) are DENIED as moot.

(4)     The IBEW's Motions for Summary Judgment (C03-2052-LRR, docket no. 20; C03-2063-LRR, docket no. 30) are DENIED as moot.

**SO ORDERED.**

**DATED** this 25th day of May, 2005.

_____

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA